### BUELL v. CITY OF MONTAGUE et al.
### No. 12502.

United States Court of Appeals
Ninth Circuit.

July 27, 1951.

Barr & Hammond, Yreka, Cal., for appellant.

Samuel R. Friedman, Yreka, Cal., for appellee City of Montague.

Before MATHEWS, ORR and POPE, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment obtained by the City of Montague, a municipal corporation of California, in a proceeding instituted by Montague Water Conservation District, hereafter called the debtor, under chapter 9 of the Bankruptcy Act, 11 U.S.

C.A. §§ 401–404,[1] the debtor being one of the "taxing agencies or instrumentalities" named in § 401.

The debtor instituted this proceeding on December 10, 1943, by filing its petition with the United States District Court for the Northern District of California, Northern Division. The debtor's petition stated, in substance, that the debtor was an irrigation district organized under the laws of California in 1925 and was located wholly within Siskiyou County, California;[2] that the debtor had issued and sold in 1926, and had outstanding on December 10, 1943, its coupon bonds in the total amount of $1,-395,000, maturing serially from 1947 to 1965 and bearing interest at the rate of 6% per annum, payable semiannually; that accrued interest on the bonds was past due and in default; that the bonds and interest thereon were payable out of assessments levied against lands within the debtor's boundaries; that the lands were not of sufficient value to pay the bonds and interest thereon; that the debtor was insolvent and unable to meet its debts as they matured; that it desired to effect a composition of its bonded indebtedness; that a plan of composition had been prepared and was filed and submitted with the debtor's petition; and that creditors of the debtor owning 90.9% in amount of the bonds—the only securities affected by the plan—had accepted it in writing.

The plan of composition was set forth in, and formed a part of, an agreement, sometimes called the composition agreement,[3] between the debtor and W. E. Buell dated December 6, 1943. The agreement recited that Buell had "in his possession for the purposes of collection" 90.9% in amount of the above mentioned bonds; that a schedule had been prepared by the debtor and Buell in which "each tract of land in the District"[4] was listed; and that the schedule was marked "Exhibit B," attached to the agreement and made a part thereof. The plan was, in part, as follows:

"That the said Buell, as trustee for all bondholders, will accept from any individual landowner in the District[5] in full settlement of the liability of such land for the payment of all the outstanding bonds and coupons of the District whether due or to become due the amount set forth in Exhibit 'B' opposite the description of such land in the column marked 'Cash Price' if paid in cash on or before 90 days after the final confirmation of this plan by the U. S. District Court . * * *

"That said Buell as trustee for all of the bondholders, will accept from any landowner, not desiring to pay in cash as just above provided, in full settlement of the liability of such land for the payment of all the outstanding bonds and coupons of the District whether due or to become due, a note and a first deed of trust upon the land of such landowner containing the following terms and amounts, to-wit:

"(a) Such note and deed of trust shall be in an amount equal to the amount shown opposite the description of such land in Exhibit 'B,' in the column marked 'Term Price' and shall be for a term of not to exceed 10 years and shall bear interest at the rate of 5% per annum from the date of execution of the note and deed of trust, if made prior to 90 days after final confirmation of the plan by the District Court[6] * * *

"That in consideration of the agreement by said bondholders to release the lands in the District from liability for payment of

1. In this proceeding, the debtor was incorrectly referred to as a bankrupt. Actually, there was no adjudication of bankruptcy and hence no bankrupt.

2. Siskiyou County is in the Northern Division of the Northern District of California. See 28 U.S.C.A. § 84(a) (1).

3. In this proceeding, the terms "plan of composition" and "composition agreement" were used interchangeably.

4. In the agreement and in the plan, the debtor was called the District.

5. See footnote 4.

6. Another paragraph of the plan prescribed terms and conditions on which any individual landowner might "release his land from the obligation of the outstanding bonds and coupons, either by the payment of cash or the execution of a note and deed of trust," after the expiration of the 90-day period.

the outstanding bonds and coupons of the District in the manner provided above the District agrees:

"(a) To * * * make all annual levies for bond and interest in an amount and at the times required by the Irrigation District Laws of California.

"(b) To enforce the collection of such levies * * * at the time and in the manner provided by the laws of California, and to pay all such collections to the bondholders or their legal representative. * * *"

In the schedule (Exhibit B) attached to the composition agreement, 450 tracts of land were listed, and the "cash price" and "term price" of each tract were indicated.

Upon the filing of the debtor's petition, the District Court entered an order approving it as properly filed and an order fixing a time and place for hearing it and providing that notice thereof be given. After such notice, a hearing was had, and on March 4, 1944, the District Court entered an interlocutory decree confirming the plan of composition and retaining jurisdiction for the purpose of making such orders as might be required for carrying out the provisions of the plan. The final decree provided for in 11 U.S.C.A. § 403(f) has not been entered. Consequently this proceeding is still pending in the District Court.

At all pertinent times, the City of Montague owned a tract of land known as, and hereafter called, the airport property, which the City used as a garbage dump, sewage disposal plant and airport. The airport property was within the debtor's boundaries, but was not listed in the schedule (Exhibit B) attached to the composition agreement. It was purposely omitted from that schedule, apparently because it was not believed to be subject to assessment.[7]

Between July 1, 1945, and June 30, 1947, the debtor, at Buell's instigation, levied two assessments against the airport property for payment of the debtor's bonded indebtedness—one for the fiscal year 1945-1946 and one for the fiscal year 1946-1947.[8] On May 11, 1949, the City filed in this proceeding its petition for a judgment decreeing the rights of the City, the debtor and Buell;[9] decreeing that the debtor was not entitled to levy any "bond assessment" against the airport property; decreeing that the debtor and Buell were not entitled to "have recourse" to the airport property; and decreeing such other and different relief as might seem proper. The ground of the City's petition was, in effect, that by omitting the airport property from the schedule (Exhibit B), the plan of composition impliedly provided that no assessment should be levied against it. Thus the City's petition was, in effect, a petition to enforce a provision of the plan. The debtor and Buell answered the City's petition and prayed that the City take nothing thereby. The District Court, after hearing the City's petition, entered a judgment ordering, adjudging and decreeing that the "assessment" levied by the debtor against the airport property[10] be "set aside and vacated," and ordering the debtor "not to assess said property for the said bond indebtedness set forth in the composition agreement dated December 6, 1943." From that judgment Buell, as trustee for the bondholders, took this appeal.

■ Two contentions are urged by Buell. His first contention is that the District Court had no jurisdiction to hear the City's petition. Having entered an interlocutory decree confirming the plan of

---

7. Up to the time this proceeding was instituted, the debtor, so far as the record shows, had never levied any assessment against the airport property.

8. These, so far as the record shows, were the only assessments ever levied against the airport property.

9. By the plan of composition and the interlocutory decree confirming it, Buell was made trustee for all the bondhold-

ers. In the City's petition, Buell was correctly referred to as trustee for the bondholders and was incorrectly referred to as trustee in bankruptcy. There being no adjudication of bankruptcy, there was no occasion to appoint a trustee in bankruptcy, and none was appointed.

10. In the judgment, the two assessments levied against the airport property were treated as one.

composition, the District Court had jurisdiction to enforce the provisions of the plan. As stated above, the City's petition was, in effect, a petition to enforce a provision of the plan—the implied provision that no assessment should be levied against the airport property. Hence the District Court had jurisdiction to hear the City's petition.

Buell's second contention is that the City was not a proper party—a contention so obviously lacking in merit as not to require discussion.

Judgment affirmed.